# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

**CALIFORNIANS FOR ALTERNATIVES TO TOXICS,**

Plaintiff**,**

v.

**KERNEN CONSTRUCTION CO., ET AL.,**

Defendants**.**

CASE NO. 16-cv-04007-YGR

**ORDER GRANTING PLAINTIFF'S MOTION TO APPROVE PROPOSITION 65 SETTLEMENT [CALIFORNIA HEALTH & SAFETY CODE SECTION 25249.7(F)(4)]**

Re: Dkt. No. 113

Plaintiff Californians for Alternatives to Toxics filed its Motion to Approve Proposition 65 Settlement on September 11, 2017. (Dkt. No. 113.) The matter came on for hearing on November 7, 2017. Plaintiff appeared by and through its counsel, Andrew L. Packard and David Williams. Defendants appeared by and through their counsel, Allison Jackson.

Having carefully considered the papers submitted on this motion, including the supplemental memorandum of points and authorities in support of the motion (Dkt. No. 123), and the hearing held on November 7, 2017, the Court **GRANTS** plaintiff's motion. Specifically, the Court makes the following findings as to the proposed Consent Agreement ("Consent Agreement"), attached hereto as Exhibit 1, pursuant to California Health & Safety Code Section 25249.7(f)(4):

    (a) The warning requirement of Chapter 6.6 of the Health & Safety Code does not apply to the instant settlement;

    (b) The award of attorney's fees is reasonable under California law; and,

    (c) The penalty amount is reasonable based on the criteria set forth in California Health & Safety Code Section 25249.7(b)(2).

The corrected paragraph in plaintiff's supplemental memorandum of points and authorities in support of the motion (Dkt. No. 123) shall be deemed to replace the corresponding paragraph in

plaintiff's original memorandum.  (Dkt. No. 114.)

Pursuant to the parties' Consent Agreement, the Court **DISMISSES WITH PREJUDICE** plaintiff's Clean Water Act claims and retains jurisdiction over the enforcement of the Consent Agreement as provided therein.

The Clerk of the Court shall close the file.

This order terminates Docket No. 113.

**IT IS SO ORDERED.**

Dated:  November 13, 2017

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

EXHIBIT 1

ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
E-mail: andrew@packardlawoffices.com
        wncarlon@packardlawoffices.com

WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
1126 16th Street, Suite 204
Arcata, CA 95521
Tel: (707) 630-5061
Fax: (707) 630-5064
Email: wverick@igc.org

DAVID WILLIAMS (State Bar No. 144479)
Law Offices of David Williams
1990 N. California Blvd., 8th Floor
Walnut Creek, CA 94596
Tel: (510) 847 2356
Fax: (925) 332-0352
E-mail: dhwill7@gmail.com

Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

ALLISON G. JACKSON (State Bar No. 157078)
Harland Law Firm LLP
622 H Street
Eureka, CA 95501-1026
Tel: (707) 444-9281
Fax: (707) 445-2961
Email: ajackson@harlandlaw.com

Attorneys for Defendants
KERNEN CONST. CO.; BEDROCK INVESTMENTS LLC;
SCOTT FARLEY; and KURT KERNEN

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>KERNEN CONSTRUCTION CO., BEDROCK INVESTMENTS, LLC, KURT | Case No. 4:16-CV-04007-YGR<br><br>**CONSENT AGREEMENT**<br>**(Federal Water Pollution Control Act,**<br>**33 U.S.C. §§ 1251 to 1387)** |

KERNEN, and SCOTT FARLEY,

                    Defendants.

**WHEREAS**, Plaintiff Californians for Alternatives to Toxics (hereinafter "CATs") is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of California's waters;

**WHEREAS**, Defendants Kernen Construction Co., Bedrock Investments, LLC, Kurt Kernen, and Scott Farley (hereinafter "Kernen" or "Defendants") own and/or operate an approximately 37-acre facility at 2350 Glendale Drive in McKinleyville, California which includes storage and manufacturing of rock aggregate products, storing of scrap roofing shingles, storing of scrap metal, and storage of soil and organic debris (collectively, the "Facility") (a map of the Facility is attached hereto as **Exhibit A** and incorporated herein by reference);

**WHEREAS,** CATs and Defendants collectively shall be referred to as the "Parties;"

**WHEREAS**, the Facility collects and discharges storm water from the Facility into Hall Creek, which is a tributary of the Mad River; the Blue Lake hydrologic sub area of the Mad River hydrologic unit is a source of domestic and municipal public drinking water;

**WHEREAS**, storm water discharges associated with industrial activity are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES"), General Permit No. CAS000001, State Water Resources Control Board ("State Board") Water Quality Order No. 14-57-DWQ, issued pursuant to Section 402(p) of the Clean Water Act ("Act"), 33 U.S.C. §1342(p), (hereinafter "General Permit") and, prior to July 1, 2015, were regulated by Water Quality Order No. 91-13-DWQ, as amended by Water Quality Order 92-12-DWQ and 97-03-DWQ;

**WHEREAS**, on or about May 13, 2016, Plaintiff provided notice of Defendants' violations of the Act ("Clean Water Act Notice Letter"), and of its intention to file suit against Defendants to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region IX; the U.S. Attorney General; the Executive Director of the State Board; the Executive

Officer of the Regional Water Quality Control Board, North Coast Region ("Regional Board"); and to Defendants, as required by the Act, 33 U.S.C. § 1365(b)(1)(A) (a true and correct copy of CATs' Clean Water Act Notice Letter is attached hereto as **Exhibit B** and incorporated herein by reference);

      **WHEREAS**, on or about June 2, 2016, Plaintiff provided notice of Kernen Construction Co.'s and Bedrock Investments, LLC's alleged violations of California Health & Safety Code § 25249.5 *et seq.* (referred to as "Proposition 65") ("Proposition 65 Notice Letter"), and of its intent to file suit to the Proposition 65 Enforcement Reporting section of the office of the California Attorney General ("California Attorney General"); the District Attorney of each California county containing sources of drinking water potentially impacted by such violations of Proposition 65 as described in the Proposition 65 Notice Letter; and, to Kernen Construction Co. and Bedrock Investments, LLC, as required by California Health & Safety Code Section 25249.5, *et seq.* (a true and correct copy of CATs' "Proposition 65 Notice Letter" is attached hereto as **Exhibit C** and incorporated herein by reference);

      **WHEREAS**, Defendants deny the occurrence of the violations alleged in the Clean Water Act Notice Letter and maintain that Kernen has complied at all times with the provisions of the General Permit and the Clean Water Act or, alternatively, that there are no "ongoing and continuous" violations of the General Permit or the Act;

      **WHEREAS**, Defendants deny the occurrence of the violations alleged in the Proposition 65 Notice Letter and maintain that Kernen has complied at all times with the provisions of Proposition 65;

      **WHEREAS**, the Parties agree that it is in their mutual interest to resolve this matter as to all entities and persons named in the Clean Water Act Notice Letter and the Proposition 65 Notice Letter without litigation and enter into this Consent Agreement ("Agreement")[1];

_____

[1] The Parties ~~have elected to litigate the Proposition 65 claim separately, and have scheduled~~ cross motions for summary judgment to be heard on ~~May 16, 2017~~. Several of the terms herein are noted as ~~contingent on the outcome of the litigation resolving the Proposition 65 claim.~~

- 3 -

**WHEREAS**, on or about July 15, 2016, CATs filed a complaint against Defendants in the United States District Court, Northern District of California (this matter is hereinafter referred to as "the Action");

**WHEREAS**, on or about August 8, 2016, CATs filed a first amended complaint ("First Amended Complaint") incorporating a Proposition 65 claim in the Action upon the expiration of the Proposition 65 Notice Letter;

**WHEREAS**, the parties agree that Defendants entering into this Consent Agreement is not any admission of liability by Defendants regarding the claims made by Plaintiff in the complaint filed July 15, 2016 nor the First Amended Complaint filed August 8, 2016.

**WHEREAS**, for purposes of this Agreement only, the Parties stipulate that venue is proper in this Court, and that Defendants do not contest the exercise of jurisdiction by this Court to dismiss this matter with prejudice under the terms of this Agreement;

**WHEREAS**, within five (5) calendar days of mutual execution, this Agreement shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c);

**WHEREAS,** at the time the Agreement is submitted for approval to the United States District Court, CATs shall notify the Court of the expected date of the expiration of the statutory review period identified above;

**AND WHEREAS**, within ten (10) calendar days of expiration of the statutory review period, , the Parties shall file with the Court a Stipulation and Order that shall provide that the Clean Water Act claims therein shall be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) concurrently with the District Court's retention of jurisdiction for the enforcement of this Agreement as provided herein (the date of entry of the Order to dismiss the Clean Water Act claims shall be referred to herein as the "Court Approval Date").

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AS FOLLOWS:**

**I.**     **COMMITMENTS OF DEFENDANTS**

1.      **Compliance with General Permit and the Clean Water Act.**  Throughout the term of this Agreement, Kernen shall continue implementing all measures needed to operate the Facility in compliance with the requirements of the General Permit, the Clean Water Act and Proposition 65, subject to any defenses available under the law.

2.      **Implementation of Specific Storm Water Best Management Practices.**  Unless otherwise indicated below, on or before **October 1, 2017**, Kernen shall complete the implementation and incorporation into the Facility's Storm Water Pollution Prevention Plan ("SWPPP") of the following storm water source control measures/Best Management Practices ("BMPs") at the Facility:

(a)      *Mandatory Minimum Best Management Practices*.  Kernen shall implement all mandatory minimum BMPs set forth in Section X.H of the General Permit;

(b)      *Containment of Discharges From The Aggregate Processing and Stock Storage Area ("Upper Yard").*  Defendants agree to construct a continuous impermeable berm, comprised of either asphalt/concrete or soil, around the southern and western perimeters of the Upper Yard; see continuous berm identified on the Facility Map attached hereto as **Exhibit A**).  The berm shall be constructed to prevent the discharge of storm water from anywhere along this perimeter, other than at the discharge points shown on **Exhibit A** and designated as discharge points in the Facility SWPPP.

(c)      *Elimination of Discharges from Entry Gate in the Northwest Corner of the Upper Yard.*  Defendants agree to construct a four inch, "speed bump" style berm across the entire entry gate in the Northwest corner of the Upper Yard in order to prevent discharges from occurring at this point.

(d)      *Reconstruction of Discharge Point No.1 & Sampling Location for Sampling Point No. 1.*  Defendants agree to reconstruct this discharge point to collect and discharge all flows from the three large drop inlets on the eastern half of the Upper Yard.  Defendants shall submit to Plaintiff drawings of their plan no later than September 1, 2017.  Plaintiff shall have 45 days to review, comment and either consent or disagree.  In the event Plaintiff disagrees, the parties shall have 14 days to submit letters explaining their positions to the Honorable Joseph Spero.  Chief Magistrate Spero shall render a final binding, non-appealable decision. Monitoring samples for these flows shall be taken at Sampling Point No. 1, as that location is designated on **Exhibit**

1    A.

2         (e)    *Employee Parking Lot Discharges.*  Defendants agree to maintain structural BMPs in

3    the Employee Parking Lot area (identified on the Facility Map attached hereto as **Exhibit A**) such that

4    no storm water associated with industrial activities commingles with exempted storm water flows in,

5    or discharges from, the Employee Parking Lot area.  In the event that CATs can demonstrate that this

6    is occurring, Defendants shall be in material breach of this Agreement and subject to the imposition of

7    an additional mitigation payment to the Rose Foundation in an amount to be determined by the Parties

8    through the dispute resolution procedures set forth herein.

9         (f)    *Advanced Filtration at All Discharge Points to Address COD, Al, Fe, Zn and Cu*

10   *Exceedances.*  Defendants agree to install, at each Facility discharge point on the Upper Yard, a

11   sediment catchment system functionally equivalent[2] to Ultra-Pipe Socks, Ultra-Drain Guards and

12   Filtrexx EnviroSoxx, as appropriate, and to install a metal-absorbing filtration sock functionally

13   equivalent to UltraTech's *Ultra-Filter Sock*, with heavy metal removal media as the last filtration

14   medium prior to discharge[3];

15        (g)    *Active Stockpile & Debris Management.*  Defendants agree to install

16   Filtrexx EnviroSoxx to control and manage each Facility stockpile or debris pile (including but

17   not limited to concrete, aggregate, gravel, soil, compost, wood debris, shingles, scrap metal, or

18   any other debris).  (See **Exhibit A** for the location of each such pile, and its associated BMPs

19   as described herein.)  These filtration socks shall be placed on the down gradient half of each

20   such pile such that all storm water flowing from the pile receives filtration through the socks.

21

22

23   [2] As used in this Agreement, "functionally equivalent" shall mean that, in the event that Defendants

24   elect to use any alternative products not specified herein, they shall confer with Plaintiff in good faith to obtain Plaintiff's prior written agreement before use.

25   [3] All storm water management products called for in this Agreement shall be used in accordance with the manufacturer's directions, and cleaned and inspected on a monthly basis during the Wet Season.

26   All such cleaning and inspections shall be logged with the date and the name of the individual undertaking the cleaning or inspections; the logs shall be incorporated into and stored with the

27   SWPPP.

28

If the metal socks do not work to reduce pollutant concentrations to below the Evaluation Levels set forth in **Exhibit D** during the July 1-December 31, 2017 reporting period (or if Defendants fail to collect all samples required under this Agreement during this reporting period), then Defendants also agree to contain each such Facility stockpile or debris pile within straw wattles (or their functional equivalent) and to access the active piles only from an area uphill to the active pile. These containment wattles shall be installed on or before January 15, 2018.

(h)     *Inactive Stockpiles and Debris Management.* Kernen's inactive stockpiles and debris are designated on the Facility Site Map, attached as **Exhibit A**. Defendants agree to contain all inactive stock piles and debris within a continuous and unbroken set of straw wattles (or the functional equivalent) during the period from September 15th to May 15th.

(i)     *Metal Parts & Equipment Storage.* Defendants agree to store on pallets or 4 x 4 blocks (or the functional equivalent) all metal parts, equipment, non-debris (which exempts scrap metal pile designated in **Exhibit A**), and any other metal objects capable of being stored on pallets or 4 x 4 blocks such that storm water surface flows do not come into contact with these items.

(j)     *Secondary Containment Around All Oil Drums and Above Ground Storage Tanks ("ASTs").* Defendants agree to install secondary containment, of sufficient size to contain all spills within the containment structures, based on the volume of the stored materials, for all oil drums and ASTs at the Facility. Defendants further agree that all oil drums at the Facility shall be placed within areas with adequate secondary containment at all times. These locations are identified on the Site Map attached hereto as **Exhibit A**.

(k)     *Improved Spill Response/Spill Kits.* Defendants agree to install six "spill kits" at the Facility, placed throughout the Facility in a manner to best address spills of fuel, lubricant, waste oil or any other fluid spills. The locations of each these spill kits are identified on the Site Map attached hereto as **Exhibit A**.

(l)     *Elimination of All Unauthorized Non-storm Water Discharges from the*

*Facility.*  Defendants agree to eliminate all unauthorized, non-storm water discharges occurring at the Facility, including but not limited to all waters associated with aggregate processing and storage, and all waters associated with truck washing.

(m)    *Subsurface Re-Routing of Storm Water Flowing From the Oil/Water Separator at the Truck Wash Station.*  Defendants agree to re-route all storm water flowing from the Oil/Water Separator at the Truck Wash Station (which, if discharged, would be an unauthorized non-storm water discharge under the General Permit) to the County sanity sewer so as to eliminate possible non-storm water discharge from Discharge Point No. 3.  Defendants shall confirm the City of Arcata's agreement to allow this connection in writing to Plaintiff on or before September 15, 2017; in the event that the City has not agreed to allow the connection by that date, the Parties shall meet and confer in good faith in or before October 1, 2017 to address the elimination of unauthorized non-storm water discharges from the Facility before October 31, 2017.  The location of this subsurface conveyance connecting to the sanitary sewer is identified on the Site Map attached hereto as **Exhibit A**.

(n)    *Battery Storage.*  Defendants agree to store all batteries at the Facility inside at all times.

(o)    *Containment of Discharges From The Soil/Gravel Yard and Ground Asphalt Piles ("Lower Yard").*  Defendants agree to install Filtrexx EnviroSoxx at the main location where storm water discharges in a southerly direction from the Lower Yard into the East-West Drainage Ditch along the perimeter of the Lower Yard, approximately midway between Noisy Creek and Hall Creek (this location is identified in **Exhibit A**).  Defendants further agree to install Filtrexx EnviroSoxx at each of the existing gravel check dams in the East-West drainage ditch from Noisey Creek to Hall Creek as depicted in Exhibit A.  Defendants further agree to prevent all storm water flowing from the Ground Asphalt Piles located near Hall Creek at the Western end of the East-West Drainage from discharging from the Facility.

(p)    *Cease Accepting Construction and Demolition Debris.*  Defendants shall

no longer accept Construction and Demolition debris, including scrap metal, at the Glendale Yard no later than September 1, 2017.

(q)     *Inspection, Maintenance and Repair of Storm Water Conveyance Located Along East-West Road Forming the Southern Perimeter of the Lower Yard.* Defendants agree to inspect this conveyance on a monthly basis during the period from September 15th through May 15th of each year, with all such inspections logged with the date and the name of the individual undertaking the inspections; these logs shall be incorporated into and stored with the SWPPP. Defendants agree to promptly repair any damage to this conveyance, including the adjacent berming, with all such repairs logged with the date and the name of the individual undertaking the repair inspections; these logs shall be incorporated into and stored with the SWPPP.

(r)     *Facility Mapping.* On or before October 1, 2017, Defendants agree to revise the Site Map appended to the current SWPPP to comply with all of the requirements in Section X.E.1-3 of the General Permit and for use in documenting this Agreement.

(s)     *Increased Employee Training.* Kernen shall increase training for Kernen's Storm Water Pollution Prevention Team ("SWPPT"), including holding one training meeting in January and one training meeting in October of each year. Kernen will incorporate the holding of these twice-annual meetings in its new SWPPP. Kernen shall target training on tracking what storm events qualify for sampling purposes, undertaking visual monitoring, and logging and properly reporting data in the Facility's SWPPP, Annual Report and the State's on-line reporting system ("SMARTS"). Kernen shall log these meetings with the date, materials covered, written agenda, and a list of attendees for each, and shall retain these logs with the SWPPP. Kernen shall have at least one member of the SWPPT, that meets the certification qualifications, be formally certified as a Qualified Industrial Storm Water Practitioner ("QISP");

(t)        *Public Rain Data.*  Unless Kernen installs and maintains a fully automated rain gauge at the Facility, the Parties shall use publicly-available rain data to resolve any disputes under this Consent Agreement.

**3.        SWPPP Amendments.**  On or before October 1, 2017 Defendants shall amend the Facility SWPPP to incorporate all of the relevant requirements of this Agreement and the Revised General Permit.  These revisions shall reflect all then-current site conditions and practices and identify potential Contaminants of Concern ("COC"), identify the location of all pervious and impervious areas, drop inlets, BMPs, and storm water flow vectors.  These revisions shall also provide for required data logging; weekly monitoring and maintenance of all Facility collection and discharge points during the Wet Season; and twice-annual storm water management training for Facility employees.

**4.        Sampling Frequency.**   For the 2017-2018 and 2018-2019 reporting years ending June 30th (2018 and 2019), Defendants shall collect and analyze samples from three (3) Qualifying Storm Events[4] ("QSEs") within the first half of each reporting year (July 1 to December 31), and three (3) QSEs within the second half of each reporting year (January 1 to June 30).  The storm water sample results shall be compared with the values set forth in **Exhibit D**, attached hereto, and incorporated herein by reference.  If the results of any such samples exceed the parameter values set forth in **Exhibit D**, Defendants shall comply with the "Action Memorandum" requirements set forth below.

**5.        Sampling Parameters.**  All six (6) samples in each reporting year shall be analyzed for each of the constituents listed in **Exhibit D**, including TMDLs, as applicable, by a laboratory accredited by the State of California.  All samples collected from the Facility shall be delivered to the

---

[4] A Qualifying Storm Event (QSE) is defined in the Revised General Permit as a precipitation event that: (a) Produces a discharge for at least one drainage area; and (b) is preceded by 48 hours with no discharge from any drainage area.  *See* Revised General Permit, Section XI(b)(1).

laboratory as soon as possible to ensure that sample "hold time" is not exceeded. Analytical methods used by the laboratory shall comply with General Permit requirements in regards to both test method and detection limit. See General Permit, Table 2, at 43. Sampling results shall be provided to CATs within ten (10) days of Defendants' receipt of the laboratory report from each sampling event, pursuant to the Notice provisions below. Defendants agree to analyze all their storm water samples taken during the first reporting period (July 1, 2017-December 31, 2017) for pentachlorophenol ("PCP") and polychlorinated biphenyl ("PCB"); if all three required samples are taken during QSEs and the results are "non-detect" for PCP or for PCB then testing for that specific pollutant can be discontinued for the term of the Agreement.

**6.    "Action Memorandum" Trigger; CATs Review Of "Action Memorandum"; Meet-and-Confer.**  If any sample taken during the two (2) reporting years referenced in Paragraph 4 above exceeds the Evaluation Levels set forth in **Exhibit D**, or if Defendants fail to collect and analyze samples from six (6) QSEs, then Defendants shall prepare a written statement discussing the exceedance(s) and/or failure to collect and analyze samples from six (6) storm events, the possible cause and/or source of the exceedance(s), and additional measures that will be taken to address and eliminate future exceedances and/or failures to collect required samples ("Action Memorandum").

The Action Memorandum shall be provided to CATs not later than July 15 following the conclusion of each reporting year, on July 15, 2018 and July 15, 2019. Such additional measures may include, but are not limited to, further material improvements to the storm water collection and discharge system, changing the type and frequency of Facility sweeping, changing the type and extent of storm water filtration media or modifying other industrial activities or management practices at the Facility. Such additional measures, to the extent feasible, shall be implemented immediately and in no event later than sixty (60) days after the due date of the Action Memorandum. Within seven (7) days of implementation, the Facility SWPPP shall be amended to include all additional BMP measures designated in the Action Memorandum. CATs may review and comment on an Action Memorandum and suggest any additional pollution prevention measures it believes are appropriate; however, CATs' failure to do so shall not be deemed to constitute agreement with the proposals set forth in the Action

Memorandum. Upon request by CATs, Defendants agree to meet and confer in good faith (at the Facility, if requested by Plaintiff) regarding the contents and sufficiency of the Action Memorandum.

7. **Inspections During The Term Of This Agreement.** In addition to any site inspections conducted as part of the settlement process and the meet-and-confer process concerning an Action Memorandum as set forth above, Defendants shall permit representatives of CATs to perform up to three (3) physical inspections of the Facility during the term of this Agreement. These inspections shall be performed by CATs' counsel and consultants and may include sampling, photographing, and/or videotaping and CATs shall provide Defendants with a copy of all sampling reports, photographs and/or video. CATs shall provide at least seventy-two (72) hours advance notice of such physical inspection, except that Defendants shall have the right to deny access if circumstances would make the inspection unduly burdensome and pose significant interference with business operations or any party/attorney, or the safety of individuals. In such case, Defendants shall specify at least three (3) dates within the two (2) weeks thereafter upon which a physical inspection by CATs may proceed. Defendants shall not make any alterations to Facility conditions during the period between receiving CATs' initial seventy-two (72) hour advance notice and the start of CATs' inspection that Defendants would not otherwise have made but for receiving notice of CATs' request to conduct a physical inspection of the Facility, excepting any actions taken in compliance with any applicable laws or regulations. Nothing herein shall be construed to prevent Defendants from continuing to implement any BMPs identified in the SWPPP during the period prior to an inspection by CATs or at any time.

8. **Communications To/From Regional and State Water Boards.** During the term of this Agreement, Kernen shall provide CATs with courtesy copies of all documents submitted to, or received from, the Regional Water Board or the State Water Board concerning storm water discharges from the Facility, including, but not limited to, all documents and reports submitted to the Regional Water Board and/or State Water Board as required by the current General Permit. Such documents and reports shall be provided to CATs via email pursuant to the Notice provisions set forth below and contemporaneously with Kernen's submission(s) to, or, receipt from, such agencies.

**9.      SWPPP Amendments.**  Pursuant to the Notice provisions set forth below,

Defendants shall provide CATs with a copy of any amendments to the Facility SWPPP made during

the term of the Agreement within fourteen (14) days of such amendment.

## II.      MITIGATION, CIVIL PENALTIES, COMPLIANCE MONITORING AND FEES AND COSTS

**10.      Mitigation Payment In Lieu Of Civil Penalties Under the Clean Water Act.**  As

mitigation to address any potential harms from the Clean Water Act violations alleged in CATs' First

Amended Complaint, Defendants agree to pay the sum of $90,000 as follows.  Defendants agree to

pay the sum of $70,000 to the Rose Foundation for Communities and the Environment for projects to

improve water quality in the Mad River watershed.  Such mitigation payment shall be remitted directly

to the Rose Foundation at: Rose Foundation, Attn: Tim Little, 1970 Broadway, Suite 600, Oakland,

CA 94612 on March 1, 2018.  Defendants further agree to pay the sum of $20,000 to the Redwood

Community Action Agency for use by its Natural Resources Services division for projects to improve

water quality in the Mad River watershed.  Such mitigation payment shall be remitted directly to Val

Martinez, Redwood Community Action Agency, at 904 G Street, Eureka, CA 95501 on March 1,

2018.

**11.      Stipulated Civil Penalties For Future Violations of Proposition 65.**

Proposition 65 provides for civil penalties of up to $2500 per violation per day, pursuant to

California Health & Safety Code § 25249.7.  In the event that Defendants discharge lead from

the facility in a concentration greater than 0.5 micrograms/liter, the Parties stipulate that

Defendants shall be liable for a stipulated civil penalty in the amount of $100 per discharge

measured and found to exceed this concentration level.  Plaintiff shall remit 75% of this

amount to the State of California pursuant to Health & Safety Code § 25249.12(c)(1).

**12.      Proposition 65 Civil Penalty; Additional Settlement Payment ("ASP") Under**

**Proposition 65.**  Defendants agree to pay the sum of $25,000 as a civil penalty pursuant to Health &

Safety Code § 25249.7(b).  Such payment shall be made to the "Law Offices of Andrew L. Packard

Attorney-Client Trust Account" on March 1, 2018; Plaintiff's counsel shall promptly remit 75% of this amount to the State of California pursuant to Health & Safety Code § 25192.

Defendants further agree to pay the additional sum of $25,000 in lieu of further civil penalties to Val Martinez, Redwood Community Action Agency, at 904 G Street, Eureka, CA 95501 no later than March 1, 2018. These additional funds shall be used to prevent, reduce or eliminate discharges of Proposition 65-listed substances to sources of drinking water, with priority given to the Mad River watershed, and consistent with the statutory goals of Proposition 65.

**13. Compliance Monitoring Funding.** To defray CATs' reasonable investigative, expert, consultant and attorneys' fees and costs associated with monitoring Defendants' compliance with this Agreement, Defendants agree to pay reasonable attorneys fees and costs not to exceed $20,000 over the course of two wet seasons (beginning October 1, 2017 ending April 1, 2019). Plaintiff shall submit periodic invoices reflecting attorneys fees and costs expended. Defendants shall have seven days to either pay or dispute those fees. All payments shall be made to the "Law Offices of Andrew L. Packard Attorney-Client Trust Account". In the event that Defendants dispute the invoice, they shall pay any part of the invoice not disputed within seven days and provide written explanations for the disputed portion of the invoice. Parties shall then meet and confer, in good faith, and if they are unable to resolve the dispute, the Parties shall have fourteen days from the day that the payment was due to submit respective letters to the Honorable Joseph Spero. Judge Spero will issue a final binding non-appealable decision concerning the disputed charges. Compliance monitoring activities may include, but shall not be limited to, site inspections, review of water quality sampling reports, review of annual reports, discussions with Defendants concerning the Action Memoranda referenced above, and potential changes to compliance requirements herein.

**14. Reimbursement of Fees & Costs.** Defendants agree to reimburse CATs in the amount of $275,000 to defray CATs' reasonable investigative, expert, consultant, and attorneys' fees and costs, and all other costs incurred as a result of investigating the activities at the Facility, bringing the action, and negotiating a resolution of this action in the public interest. Such payment shall be

made according to the following schedule: $100,000 shall be paid no later than October 1, 2017; $100,000 shall be paid no later than December 1, 2017; and, $75,000 shall be paid no later than September 1, 2018. All payments shall be made payable to the "Law Offices of Andrew L. Packard Attorney Client Trust Account."

### III.    DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT AGREEMENT

15.    With the exception of the timelines set forth above for addressing exceedances of values specified in **Exhibit D** and the Action Memoranda, if a dispute under this Agreement arises, or either Party believes that a breach of this Agreement has occurred, the Parties shall meet and confer within seven (7) days of receiving written notification from the other Party of a request for a meeting to determine whether a breach has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute.  If the Parties fail to meet and confer, or the meet-and-confer does not resolve the issue, after at least seven (7) days have passed after the meet-and-confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including filing a motion with the District Court of California, Northern District, which shall retain jurisdiction over the Action until the Termination Date for the limited purposes of enforcement of the terms of this Agreement.  The Parties shall be entitled to seek fees and costs incurred in any such motion, and such fees and costs shall be awarded, pursuant to the provisions set forth in the then-applicable federal Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure, and applicable case law interpreting such provision.

16.    **CATs' Waiver and Release.**  Upon the Court Approval Date of this Agreement, CATs, on its own behalf and on behalf of its members, subsidiaries, successors, assigns, directors, officers, agents, attorneys, representatives, and employees, releases Defendants and its officers, directors, employees, shareholders, parents, subsidiaries, and affiliates, and each of its predecessors, successors and assigns, and each of their agents, attorneys, consultants, and other representatives (each a "Released Defendant Party") from, and waives all claims arising from or pertaining to the Notice Letters, including, without limitation, all claims for injunctive relief, damages, penalties, fines,

sanctions, mitigation (excluding all fees of attorneys, experts, and others, and costs per Section II above), or any other sum incurred or claimed or which could have been claimed under the Clean Water Act or Proposition 65 in this Action, for the alleged failure of Defendants to comply with the Clean Water Act or Proposition 65 at the Facility, up to the Court Approval Date.

17. **Defendants' Waiver and Release.** Defendants, on their own behalf and on behalf of any Released Defendant Party under its control, release CATs (and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representative) from, and waives all claims which arise from or pertain to the Action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to the Action.

## IV.  MISCELLANEOUS PROVISIONS

18. The Parties enter into this Agreement for the purpose of avoiding prolonged and costly litigation of the Clean Water Act claims in the Action. Nothing in this Agreement shall be construed as, and Defendants expressly do not intend to imply, an admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Agreement constitute or be construed as an admission by Defendant of any fact, finding, conclusion, issue of law, or violation of law. However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Agreement.

19. The Agreement shall be effective upon mutual execution by all Parties. The Agreement shall terminate on the "Termination Date," which shall be February 1, 2020.

20. The Agreement may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document. An executed copy of this Agreement shall be valid as an original.

21. In the event that any one of the provisions of this Agreement is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

22. The language in all parts of this Agreement, unless otherwise stated, shall be

construed according to its plain and ordinary meaning.  This Agreement shall be construed pursuant to the law of the United Sates, without regarding to choice of law principles.

23.     The undersigned are authorized to execute this Agreement on behalf of their respective Parties and have read, understood and agreed to be bound by all of the terms and conditions of this Agreement.

24.     All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Agreement are contained herein.  This Agreement and its attachments are made for the sole benefit of the Parties, and no other person or entity shall have any rights or remedies under or by reason of this Agreement, unless otherwise expressly provided for therein.

25.     **Notices.**  Any notices or documents required or provided for by this Agreement or related thereto that are to be provided to CATs pursuant to this Agreement shall be hand-delivered or sent by U.S. Mail, postage prepaid, and addressed as follows or, in the alternative, shall be sent by electronic mail transmission to the email addresses listed below:

> Patricia Clary, Executive Director
> Californians for Alternatives to Toxics
> 600 F Street, Suite 3
> Arcata, California 95521
> Tel. (707) 834-4833
> E-mail: patty@alt2tox.org
>
> With copies sent to:
>
>  Andrew L. Packard
>  Law Offices of Andrew L. Packard
>  245 Kentucky Street, Suite B3
>  Petaluma, California 94952
>  Tel:  (707) 782-4060
>  E-mail: Andrew@packardlawoffices.com

Any notices or documents required or provided for by this Agreement or related thereto that are to be provided to Defendant pursuant to this Agreement shall be sent by U.S. Mail, postage prepaid, and addressed as follows or, in the alternative, shall be sent by electronic mail transmission to the email addresses listed below:

Kurt Kernen
Kernen Construction Company
Bedrock Investments, LLC
2350 Glendale Drive
McKinleyville, CA 95519
E-mail:

Scott Farley
Kernen Construction Company
2350 Glendale Drive
McKinleyville, CA 95519
E-mail:

With copies sent to:

Allison G. Jackson
Harland Law Firm LLP
622 H Street
Eureka, California 95501
Tel: (707) 444-9281
E-mail: ajackson@harlandlaw.com

Each Party shall promptly notify the other of any change in the above-listed contact information.

26. Signatures of the Parties transmitted by facsimile or email shall be deemed binding.

27. If for any reason the Court should decline to approve this Agreement in the form presented, the Parties shall use their best efforts to work together to modify the Agreement within thirty (30) days so that it is acceptable to the Court. If the Parties are unable to modify this Agreement in a mutually acceptable manner, this Agreement shall become null and void.

28. This Agreement shall be deemed to have been drafted equally by the Parties, and shall not be interpreted for or against any Settling Party on the ground that any such party drafted it.

29. This Agreement and the attachments contain all of the terms and conditions agreed upon by the Parties relating to the matters covered by the Agreement, and supersede any and all prior and contemporaneous agreements, negotiations, correspondence, understandings, and communications of the Parties, whether oral or written, respecting the matters covered by this Agreement. This Agreement may be amended or modified only by a writing signed by the Parties or their authorized representatives.

The Parties hereto enter into this Agreement and respectfully submit it to the Court for its

approval and entry.

Dated: _August 30, 2017_, 2017      Californians for Alternatives to Toxics

By: _____
Patricia Clary, Executive Director

Dated: _8-30_, 2017      Kernen Construction Company

By: _____
Kurt Kernen, Chief Executive Officer
_Scott Farley — General Partner_

Dated: _8-30_, 2017      Bedrock Investments, LLC

By: _____
[officer] _Scott Farley_

Dated: _____, 2017      Kurt Kernen

By: _____
Kurt Kernen

Dated: _8-30_, 2017      Scott Farley

By: _____
Scott Farley

_Approved as to form =_
_William Verick_
_Attorney for Californians for_
_Alternatives to Toxics_

_Approved as to form —8/30/17_

- 19 -

CONSENT AGREEMENT      Case No. 4:16-CV-04007-YGR

approval and entry.

Dated: _____, 2017          Californians for Alternatives to Toxics

By: _____
    Patricia Clary, Executive Director

Dated: __8/31__, 2017          Kernen Construction Company

By: _____
    Kurt Kernen, Chief Executive Officer

Dated: __8/31__, 2017          Bedrock Investments, LLC

By: _____
    [officer]

Dated: __8/31__, 2017          Kurt Kernen

By: _____
    Kurt Kernen

Dated: _____, 2017          Scott Farley

By: _____
    Scott Farley

- 19 -

**EXHIBIT A – Facility Site Map**



Figure 2
Site Plan
Upper Yard
SRN 09301

Kernen Construction
Stormwater Management BMPs
Glendale, California

Fig2-SitePlanUpperYard

April 2017

SHN
Consulting Engineers & Geologists, Inc.

PHOTO SOURCE: KERNEN, 3/17/2017

EXPLANATION

SITE BOUNDARIES
DRAINAGE AREAS
DRAINAGE DIRECTION
SAMPLE LOCATION / DISCHARGE POINT
BUILDINGS
ROADS
ACTIVE PILES
INACTIVE PILES
CREEKS
PROPOSED BMP
EXISTING BMP
SPILL KITS
SECONDARY CONTAINMENT
EMPLOYEE PARKING AREA
EASEMENTS
COUNTY GIS PARCELS

1" = 100'±
0    100
FEET

INSTALL FILTREXX SOXX ON DOWN GRADIENT HALF OF STOCKPILES (FROM SEP. 15 THROUGH MAY 15 EACH SEASON) PER I.2.(g) (TYP.)

ADD METAL SOXX TO EXISTING FILTREXX SOXX PER I.2.(f)

DRAINAGE INLETS TO BE COVERED

CONNECT TO SANITARY SEWER

ADD METAL SOXX TO EXISTING FILTREXX PER I.2.(f)

INSTALL BERM PER I.2.(b)

INSTALL PIPE SOCK PER I.2.(f) OF CONSENT DECREE

INSTALL BERM PER I.2.(b)

SECONDARY CONTAINMENT PER I.2.(j) (TYP.)

SPILL KIT PER I.2.(k) (TYP.)

ADD METAL SOXX TO EXISTING FILTREXX SOXX PER I.2.(f)

INSTALL 4-INCH SPEED BUMP BERM PER I.2.(c)

LOWER YARD (SEE FIGURE 3)

NOISY CREEK



EXPLANATION

— SITE BOUNDARIES
—— DRAINAGE AREAS
—— DRAINAGE DIRECTION
◆ SAMPLE LOCATION / DISCHARGE POINT
—·— ROADS
▭ ACTIVE PILES
····· CREEKS
—— PROPOSED BMP
—— EXISTING BMP
—— EASEMENTS
▭ COUNTY GIS PARCELS

1" = 200' ±
0          200
FEET

PHOTO SOURCE: KERNEN, 3/17/2017

EQUIPMENT STORAGE

AGG.

TENANT AREA

SAND

DIRT

INSTALL FILTREXX SOXX PER I.2.(o)

NOISY CREEK

SAND

NORA

TENANT AREA

ASPHALT GRINDINGS

HALL CREEK

CHECK DAM (TYP.)

INSTALL FILTREXX SOXX ON DOWN GRADIENT HALF OF STOCKPILES (FROM SEP. 15 THROUGH MAY 15 EACH SEASON) PER I.2.(g) (TYP.)

SLTOP

GLENDALE DR.

UPPER YARD (SEE FIGURE 2)

SGH
Consulting Engineers & Geologists, Inc.

April 2017        Fig3-SitePlanLowerYard

Kernen Construction
Stormwater Management BMP's
Glendale, California

Site Plan
Lower Yard
SRN 08081

Figure 3



EXPLANATION

— SITE BOUNDARIES

☐ BUILDINGS

✦ SAMPLE LOCATION / DISCHARGE POINT

▨ ACTIVE PILES

‥‥ CREEKS

— ROADS

— EXISTING BMP

— PROPOSED BMP

- - - DRAINAGE AREAS

—— EASEMENTS

☐ COUNTY GIS PARCELS

PHOTO SOURCE: GOOGLE, 5/26/2016

N

1" = 300 '±

0        300

FEET

Kernen Construction
Stormwater Management BMP's
Glendale, California

April 2017

SHN
Consulting Engineers
& Geologists, Inc.

Fig3-SiteOverview

Site Plan
Overview
SHN 016181

Figure 1

GLENDALE DR.

NCRA

HALL CREEK

516-151-017

SL/DP

516-151-007

516-151-016

LOWER YARD
(SEE FIGURE 3)

NOISY CREEK

516-141-003

516-141-005

516-141-017

UPPER YARD
(SEE FIGURE 2)

AREA 4

AREA 3

AREA 2

AREA 1.a

AREA 1.b

SL

SL/DP

DP

SL/DP

**EXHIBIT B – CWA Notice of Violation and Intent to Sue Letter**

LAW OFFICES OF

# ANDREW L. PACKARD

100 PETALUMA BLVD N, STE 301, PETALUMA, CA 94952
PHONE (707) 763-7227   FAX (707) 763-9227
INFO@PACKARDLAWOFFICES.COM

May 13, 2016

**VIA CERTIFIED MAIL**

Scott Farley, Partner                                  Scott Farley, Partner
Kernen Construction Co.                          Kernen Construction Co., Glendale Yard
P.O. Box 1340                                          2350 Glendale Drive
Blue Lake, CA 95525                               McKinleyville, CA 95519

Kurt Kernen, Agent for Service of Process
Bedrock Investments, LLC
2350 Glendale Road
Arcata, CA 95519

**Re:    NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE
          FEDERAL WATER POLLUTION CONTROL ACT ("CLEAN WATER ACT")
          (33 U.S.C. §§ 1251 *et seq.*)**

Dear Mr. Farley and Mr. Kernen:

This firm represents Californians for Alternatives to Toxics ("CATs") in regard to
violations of the Clean Water Act ("the Act") occurring at Kernen Construction Company's
("Kernen Construction") Glendale Yard located at 2350 Glendale Drive, in McKinleyville,
California (the "Facility").  This letter is being sent to you as the responsible owners, officers
and/or operators of the Facility.  Unless otherwise noted, Kernen Construction Co., Bedrock
Investments, LLC, Mr. Farley and Mr. Kernen shall hereinafter be collectively referred to as
"Kernen Construction."  CATs is a non-profit association dedicated to the preservation,
protection and defense of the environment, wildlife and natural resources of California waters,
including the waters into which Kernen Construction discharges polluted storm water.

Kernen Construction is in ongoing violation of the substantive and procedural
requirements of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, and National Pollutant Discharge
Elimination System ("NPDES") General Permit No. CAS000001, State Water Resources Control
Board Water Quality Order No. 91-13-DWQ, as amended by Order No. 92-12-DWQ, Order No.
97-03-DWQ, and Order 2014-0057-DWQ ("General Permit"  or "Permit").[1]

On July 1, 2015 the 2015 General Permit went into effect, superseding the 1997 General
Permit that was operative between 1997 and June 30, 2015.  The 2015 General Permit includes

---

[1] Kernen Construction submitted a Notice of Intent (NOI) to comply with the General Permit for
the Glendale Yard Facility on or about June 8, 2015.

many of the same fundamental requirements and implements many of the same statutory requirements as the 1997 General Permit. Violations of both the 1997 and 2015 General Permit provisions are enforceable under the law. 2015 General Permit, Finding A.6.

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation (40 C.F.R. § 19.4) each separate violation of the Act subjects Kernen Construction to a penalty of up to $37,500 per day per violation for all violations occurring during the period commencing five years prior to the date of this Notice of Violations and Intent to File Suit. In addition to civil penalties, CATs will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law. Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including attorneys' fees.

The Clean Water Act requires that sixty (60) days prior to the initiation of a citizen-enforcement action under Section 505(a) of the Act (33 U.S.C. § 1365(a)), a citizen enforcer must give notice of its intent to file suit. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the Chief Administrative Officer of the water pollution control agency for the State in which the violations occur. *See* 40 C.F.R. § 135.2. As required by the Act, this letter provides statutory notice of the violations that have occurred, and continue to occur, at the Facility. 40 C.F.R. § 135.3(a). At the expiration of sixty (60) days from the date of this letter, CATs intends to file suit under Section 505(a) of the Act in federal court against Kernen Construction for violations of the Clean Water Act and the Permit.

I.     **Background.**

   A.     **The Clean Water Act.**

Congress enacted the CWA in 1972 in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The Act prohibits the discharge of pollutants into United States waters except as authorized by the statute. 33 U.S.C. § 1311; *San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1156 (9th Cir. 2002). The Act is administered largely through the NPDES permit program. 33 U.S.C. § 1342. In 1987, the Act was amended to establish a framework for regulating storm water discharges through the NPDES system. Water Quality Act of 1987, Pub. L. 100-4, § 405, 101 Stat. 7, 69 (1987) (codified at 33 U.S.C. § 1342(p)); *see also Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the Clean Water Act's permitting scheme). The discharge of pollutants without an NPDES permit, or in violation of a permit, is illegal. *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1145 (9th Cir. 2000).

Much of the responsibility for administering the NPDES permitting system has been delegated to the states. *See* 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370 (expressing California's intent to implement its own NPDES permit program). The CWA authorizes states with approved NPDES permit programs to regulate industrial storm water discharges through individual permits issued to dischargers and/or through the issuance of a single, statewide

general permit applicable to all industrial storm water dischargers.  33 U.S.C. § 1342(b).
Pursuant to Section 402 of the Act, the Administrator of EPA has authorized California's State
Board to issue individual and general NPDES permits in California. 33 U.S.C. § 1342

B.     **California's General Permit for Storm Water Discharges Associated with
       Industrial Activities**

Between 1997 and June 30, 2015, the General Permit in effect was Order No. 97-03-
DWQ, which CATs refers to as the "1997 General Permit." On July 1, 2015, pursuant to Order
No. 2015-0057-DWQ the General Permit was reissued, including many of the same fundamental
terms as the prior permit. For purposes of this notice letter, CATs refers to the reissued permit as
the "2015 General Permit." The 2015 General Permit rescinded in whole the 1997 General
Permit, except for the expired permit's requirement that annual reports be submitted by July 1,
2015, and for purposes of CWA enforcement. 2015 General Permit, Finding A.6.

Facilities discharging, or having the potential to discharge, storm water associated with
industrial activities that have not obtained an individual NPDES permit must apply for coverage
under the General Permit by filing a Notice of Intent to Comply ("NOI"). 1997 General Permit,
Provision E.1; 2015 General Permit, Standard Condition XXI.A. Facilities must file their NOIs
before the initiation of industrial operations. *Id.*

Facilities must strictly comply with all of the terms and conditions of the General Permit.
A violation of the General Permit is a violation of the CWA.

The General Permit contains three primary and interrelated categories of requirements:
(1) discharge prohibitions, receiving water limitations and effluent limitations; (2) Storm Water
Pollution Prevention Plan ("SWPPP") requirements; and, (3) self-monitoring and reporting
requirements.

C.     **Kernen Construction's Glendale Yard Facility**

Kernen Construction's primary industrial activities at the approximately 37-acre Facility
include storing and manufacturing rock aggregate products, storing scrap roofing shingles,
storing scrap metal and storage for soil and organic debris.  The industrial activities at the
Facility fall under Standard Industrial Classification ("SIC") Code 5093 and 142X, which
includes SIC Codes 1422, 1423, and 1429.

Kernen Construction collects and discharges storm water associated with industrial
activities at the Facility through at least four (4) discharge points into Hall Creek, a tributary of
Mad River, which ultimately flows into the Pacific Ocean.  Hall Creek and Mad River are waters
of the United States within the meaning of the Clean Water Act.

The General Permit requires Kernen Construction to analyze storm water samples for
TSS, pH, and Oil and Grease.  1997 General Permit, Section B.5.c.i; 2015 General Permit,
Section XI.B.6.  Facilities under SIC Code 5093 must also analyze storm water samples for Iron
("Fe"); Lead ("Pb"); Aluminum ("Al"); Zinc ("Zn"); and Chemical Oxygen Demand ("COD").
1997 General Permit, Tables 1-2; 2015 General Permit Tables 1-2.

## II.     Kernen Construction's Violations of the Act and Permit.

Based on its review of available public documents, CATs is informed and believes that Kernen Construction is in ongoing violation of both the substantive and procedural requirements of the CWA and the General Permit.  These violations are ongoing and continuous.  Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, Kernen Construction is subject to penalties for violations of the Act since May 13, 2011.

### A.     Kernen Construction Discharges Storm Water Containing Pollutants in Violation of the General Permit's Discharge Prohibitions, Receiving Water Limitations and Effluent Limitations.

Kernen Construction's storm water sampling results provide conclusive evidence of Kernen Construction's failure to comply with the General Permit's discharge prohibitions, receiving water limitations and effluent limitations.  Self-monitoring reports under the Permit are deemed "conclusive evidence of an exceedance of a permit limitation."  *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1988).

### 1.     Applicable Water Quality Standards.

The General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance. 1997 General Permit, Discharge Prohibition A.2; 2015 General Permit, Discharge Prohibition III.C. The General Permit also prohibits discharges that violate any discharge prohibition contained in the applicable Regional Water Board's Basin Plan or statewide water quality control plans and policies. 1997 General Permit, Receiving Water Limitation C.2; 2015 General Permit, Discharge Prohibition III.D. Furthermore, storm water discharges and authorized non-storm water discharges shall not adversely impact human health or the environment, and shall not cause or contribute to a violation of any water quality standards in any affected receiving water. 1997 General Permit, Receiving Water Limitations C.1, C.2; 2015 General Permit, Receiving Water Limitations VI.A, VI.B.

Dischargers are also required to prepare and submit documentation to the Regional Board upon determination that storm water discharges are in violation of the General Permit's Receiving Water Limitations. 1997 General Permit, p. VII; 2015 General Permit, Special Condition XX.B. The documentation must describe changes the discharger will make to its current storm water best management practices ("BMPs") in order to prevent or reduce any pollutant in its storm water discharges that is causing or contributing to an exceedance of water quality standards.  *Id.*

The California Toxics Rule ("CTR") is an applicable water quality standard under the Permit, violation of which is a violation of Permit conditions. *Cal. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc.,* 2015 U.S. Dist. LEXIS 108314, *21 (E.D. Cal. 2015).  CTR establishes

numeric receiving water limits for toxic pollutants in California surface waters.  40 C.F.R. § 131.38.  The CTR establishes the following numeric limits for pollutants discharged by Kernen Construction: Copper – 0.013 mg/L (maximum concentration) and Lead – 0.065 mg/L (maximum concentration).

The *Water Quality Control Plan for the North Coast Region (Revised May 2011)* ("Basin Plan") also sets forth water quality standards and prohibitions applicable to Kernen Construction's storm water discharges. The Basin Plan identifies present and potential beneficial uses for the Mad River, which include municipal and domestic water supply, hydropower generation, agricultural supply, industrial service supply, navigation, wildlife habitat, warm freshwater habitat, cold freshwater habitat, warm and cold spawning, and contact and non-contact water recreation.

## 2.    Applicable Effluent Limitations.

Dischargers are required to reduce or prevent pollutants in their storm water discharges through implementation of best available technology economically achievable ("BAT") for toxic and nonconventional pollutants and best conventional pollutant control technology ("BCT") for conventional pollutants. 1997 General Permit, Effluent Limitation B.3; 2015 General Permit, Effluent Limitation V.A. Conventional pollutants include Total Suspended Solids, Oil & Grease, pH, Biochemical Oxygen Demand and Fecal Coliform. 40 C.F.R. § 401.16. All other pollutants are either toxic or nonconventional. 40 C.F.R. §§ 401.15-16.

Under the General Permit, benchmark levels established by the EPA ("EPA benchmarks") serve as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT. *Santa Monica Baykeeper v. Kramer Metals,* 619 F.Supp.2d 914, 920, 923 (C.D. Cal 2009); 1997 General Permit, Effluent Limitations B.5-6; 2015 General Permit, Exceedance Response Action XII.A.

The following EPA benchmarks have been established for pollutants discharged by Kernen Construction: Total Suspended Solids – 100 mg/L; Oil & Grease – 15.0 mg/L; Chemical Oxygen Demand – 120 mg/L; Aluminum – 0.75 mg/L; Iron – 1.00 mg/L; Zinc – 0.117 mg/L; and Copper – 0.0636 mg/L.

## 3.    Kernen Construction's Storm Water Sample Results

The following discharges of pollutants from the Facility have violated the discharge prohibitions, receiving water limitations and effluent limitations of the Permit:

**a.    Discharge of Storm Water Containing Total Suspended Solids (TSS) at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|---|---|---|---|---|
| 1/28/16 | Site #1 | TSS | 650 | 100 |
| 1/28/16 | Site #2 | TSS | 3800 | 100 |
| 1/28/16 | Site #3 | TSS | 480 | 100 |
| 12/18/15 | Site #1 | TSS | 170 | 100 |
| 12/18/15 | Site #2 | TSS | 240 | 100 |
| 12/18/15 | Site #3 | TSS | 140 | 100 |
| 12/3/15 | Site #1 | TSS | 1500 | 100 |
| 12/3/15 | Site #2 | TSS | 1300 | 100 |
| 12/3/15 | Site #3 | TSS | 650 | 100 |
| 2/6/15 | Site#2 | TSS | 300 | 100 |
| 2/6/15 | Site #3 | TSS | 1500 | 100 |
| 12/10/14 | Site #2 | TSS | 290 | 100 |
| 12/10/14 | Site #3 | TSS | 310 | 100 |
| 2/7/14 | Site #2 | TSS | 330 | 100 |
| 2/7/14 | Site #3 | TSS | 670 | 100 |
| 12/20/12 | Site #1 | TSS | 110 | 100 |
| 12/20/12 | Site #2 | TSS | 1100 | 100 |
| 4/26/12 | Site #2 | TSS | 230 | 100 |
| 1/19/12 | Site #2 | TSS | 290 | 100 |
| 1/19/12 | Site #3 | TSS | 600 | 100 |

**b.** **Discharge of Storm Water Containing Zinc (Zn) at Concentrations in Excess of Applicable EPA Benchmark and CTR Values**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) | CTR Criteria (mg/L) |
|---|---|---|---|---|---|
| 1/14/16 | Site #1 | Zn | 0.270 | 0.117 | 0.12 |
| 1/14/16 | Site #2 | Zn | 0.370 | 0.117 | 0.12 |
| 12/18/15 | Site 1 | Zn | 0.120 | 0.117 | 0.12 |
| 12/3/15 | Site #1 | Zn | 0.550 | 0.117 | 0.12 |
| 12/3/15 | Site #2 | Zn | 0.320 | 0.117 | 0.12 |
| 12/3/15 | Site #3 | Zn | 0.140 | 0.117 | 0.12 |
| 2/6/15 | Site#2 | Zn | 0.160 | 0.117 | 0.12 |
| 2/6/15 | Site #3 | Zn | 0.270 | 0.117 | 0.12 |
| 12/10/14 | Site #2 | Zn | 0.120 | 0.117 | 0.12 |
| 2/7/14 | Site #2 | Zn | 0.210 | 0.117 | 0.12 |
| 2/7/14 | Site #3 | Zn | 0.130 | 0.117 | 0.12 |
| 12/20/12 | Site #2 | Zn | 0.373 | 0.117 | 0.12 |

| 4/26/12 | Site #2 | Zn | 0.130 | 0.117 | 0.12 |
|---------|---------|----|-------|-------|------|
| 1/19/12 | Site #2 | Zn | 0.140 | 0.117 | 0.12 |

      **c.** **Discharge of Storm Water Containing Chemical Oxygen Demand (COD) at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|------|-----------------|-----------|-----------------------------------|----------------------------|
| 1/14/16 | Site #1 | COD | 190 | 120 |
| 1/14/16 | Site #2 | COD | 330 | 120 |
| 12/3/15 | Site #1 | COD | 590 | 120 |
| 12/3/15 | Site #2 | COD | 440 | 120 |

      **d.** **Discharge of Storm Water Containing Aluminum (Al) at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|------|-----------------|-----------|-----------------------------------|----------------------------|
| 1/14/16 | Site #1 | Al | 24 | 0.75 |
| 1/14/16 | Site #2 | Al | 120 | 0.75 |
| 1/14/16 | Site #3 | Al | 23 | 0.75 |
| 12/18/15 | Site 1 | Al | 12 | 0.75 |
| 12/18/15 | Site 2 | Al | 30 | 0.75 |
| 12/18/15 | Site 3 | Al | 24 | 0.75 |
| 12/3/15 | Site #1 | Al | 74 | 0.75 |
| 12/3/15 | Site #2 | Al | 61 | 0.75 |
| 12/3/15 | Site #3 | Al | 34 | 0.75 |
| 2/6/15 | Site #1 | Al | 8.2 | 0.75 |
| 2/6/15 | Site#2 | Al | 15 | 0.75 |
| 2/6/15 | Site #3 | Al | 69 | 0.75 |
| 12/10/14 | Site #1 | Al | 4.9 | 0.75 |
| 12/10/14 | Site #2 | Al | 13 | 0.75 |
| 12/10/14 | Site #3 | Al | 18 | 0.75 |
| 12/10/14 | Site #4 | Al | 0.940 | 0.75 |
| 2/7/14 | Site #1 | Al | 4.5 | 0.75 |
| 2/7/14 | Site #2 | Al | 18 | 0.75 |
| 2/7/14 | Site #3 | Al | 25 | 0.75 |
| 12/20/12 | Site #1 | Al | 3.31 | 0.75 |
| 12/20/12 | Site #2 | Al | 23.1 | 0.75 |
| 4/26/12 | Site #1 | Al | 1.9 | 0.75 |
| 4/26/12 | Site #2 | Al | 9.8 | 0.75 |

| 1/19/12 | Site #1 | Al | 5.3 | 0.75 |
| 1/19/12 | Site #2 | Al | 12 | 0.75 |
| 1/19/12 | Site #3 | Al | 20 | 0.75 |

e. **Discharge of Storm Water Containing Iron (Fe) at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|---|---|---|---|---|
| 1/14/16 | Site #1 | Fe | 39 | 1.0 |
| 1/14/16 | Site #2 | Fe | 230 | 1.0 |
| 1/14/16 | Site #3 | Fe | 24 | 1.0 |
| 12/18/15 | Site 1 | Fe | 15 | 1.0 |
| 12/18/15 | Site 2 | Fe | 48 | 1.0 |
| 12/18/15 | Site 3 | Fe | 23 | 1.0 |
| 12/3/15 | Site #1 | Fe | 110 | 1.0 |
| 12/3/15 | Site #2 | Fe | 94 | 1.0 |
| 12/3/15 | Site #3 | Fe | 52 | 1.0 |
| 2/6/15 | Site #1 | Fe | 7.4 | 1.0 |
| 2/6/15 | Site#2 | Fe | 22 | 1.0 |
| 2/6/15 | Site #3 | Fe | 110 | 1.0 |
| 12/10/14 | Site #1 | Fe | 6.1 | 1.0 |
| 12/10/14 | Site #2 | Fe | 20 | 1.0 |
| 12/10/14 | Site #3 | Fe | 31 | 1.0 |
| 12/10/14 | Site #4 | Fe | 1.3 | 1.0 |
| 2/7/14 | Site #1 | Fe | 4.4 | 1.0 |
| 2/7/14 | Site #2 | Fe | 27 | 1.0 |
| 2/7/14 | Site #3 | Fe | 37 | 1.0 |
| 12/20/12 | Site #1 | Fe | 4.7 | 1.0 |
| 12/20/12 | Site #2 | Fe | 34.2 | 1.0 |
| 12/20/12 | Site #4 | Fe | 1.07 | 1.0 |
| 4/26/12 | Site #1 | Fe | 2.3 | 1.0 |
| 4/26/12 | Site #2 | Fe | 13 | 1.0 |
| 1/19/12 | Site #1 | Fe | 6.5 | 1.0 |
| 1/19/12 | Site #2 | Fe | 17 | 1.0 |
| 1/19/12 | Site #3 | Fe | 28 | 1.0 |

f. **Discharge of Storm Water Containing Copper (Cu) at Concentrations in Excess of Applicable EPA Benchmark and CTR Values**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) | CTR Criteria (mg/L) |
|------|-----------------|-----------|-----------------------------------|----------------------------|---------------------|
| 2/6/15 | Site #2 | Cu | 0.029 | 0.0636 | 0.013 |
| 2/6/15 | Site #3 | Cu | 0.094 | 0.0636 | 0.013 |
| 12/10/14 | Site #2 | Cu | 0.028 | 0.0636 | 0.013 |
| 12/10/14 | Site #3 | Cu | 0.034 | 0.0636 | 0.013 |
| 12/10/14 | Site #4 | Cu | 0.014 | 0.0636 | 0.013 |
| 2/7/14 | Site #2 | Cu | 0.043 | 0.0636 | 0.013 |
| 2/7/14 | Site #3 | Cu | 0.046 | 0.0636 | 0.013 |
| 12/20/12 | Site #2 | Cu | 0.0614 | 0.0636 | 0.013 |
| 4/26/12 | Site #2 | Cu | 0.020 | 0.0636 | 0.013 |
| 1/19/12 | Site #2 | Cu | 0.024 | 0.0636 | 0.013 |
| 1/19/12 | Site #3 | Cu | 0.051 | 0.0636 | 0.013 |

g.     **Discharges of Storm Water Exceeding the Basin Plan Standards for pH**

| Date | Discharge Point | Parameter | Concentration in Discharge (pH units) | Basin Plan (pH units) |
|------|-----------------|-----------|---------------------------------------|------------------------|
| 2/6/15 | Site #3 | pH | 8.76 | 6.5 – 8.5 |
| 4/26/12 | Site #1 | pH | 6.2 | 6.5 – 8.5 |
| 1/19/12 | Site #2 | pH | 8.7 | 6.5 – 8.5 |
| 1/19/12 | Site #3 | pH | 9.9 | 6.5 – 8.5 |

h.     **Kernen Construction's Sample Results Are Evidence of Violations of the General Permit**

Kernen Construction's sample results demonstrate violations of the Permit's discharge prohibitions, receiving water limitations and effluent limitations set forth above. CATs is informed and believes that Kernen Construction has known that its storm water contains pollutants at levels exceeding General Permit standards since at least May 13, 2011.

CATs alleges that such violations occur each time storm water discharges from the Facility. Attachment A hereto, sets forth the specific rain dates on which CATs alleges that Kernen Construction has discharged storm water containing impermissible levels of TSS, COD, Al, Fe, Zn, Cu, and pH in violation of the General Permit. 1997 General Permit, Discharge Prohibition A.2, Receiving Water Limitations C.1 and C.2; 2015 General Permit, Discharge Prohibitions III.C and III.D, Receiving Water Limitations VI.A, VI.B.

4.     **Kernen Construction Has Failed to Implement BAT and BCT**

Dischargers must implement BMPs that fulfill the BAT/BCT requirements of the CWA and the General Permit to reduce or prevent discharges of pollutants in their storm water

discharges. 1997 General Permit, Effluent Limitation B.3; 2015 General Permit, Effluent Limitation V.A. To meet the BAT/BCT standard, dischargers must implement minimum BMPs and any advanced BMPs set forth in the General Permit's SWPPP Requirements provisions where necessary to reduce or prevent pollutants in discharges. *See* 1997 General Permit, Sections A.8.a-b; 2015 General Permit, Sections X.H.1-2.

Kernen Construction has failed to implement the minimum BMPs required by the General Permit, including: good housekeeping requirements; preventive maintenance requirements; spill and leak prevention and response requirements; material handling and waste management requirements; erosion and sediment controls; employee training and quality assurance; and record keeping.  Permit, Section X.H.1(a-g).

Kernen Construction has further failed to implement advanced BMPs necessary to reduce or prevent discharges of pollutants in its storm water sufficient to meet the BAT/BCT standards, including:  exposure minimization BMPs; containment and discharge reduction BMPs; treatment control BMPs; or other advanced BMPs necessary to comply with the General Permit's effluent limitations. 1997 General Permit, Section A.8.b; 2015 General Permit, Sections X.H.2.

Each day that Kernen Construction  have failed to develop and implement BAT and BCT at the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a).  Kernen Construction have been in violation of the BAT and BCT requirements at the Facility every day since at least May 13, 2011.

**5.**      **Kernen Construction Has Failed to Implement an Adequate Monitoring Implementation Plan.**

The General Permit requires dischargers to implement a Monitoring Implementation Plan.  Permit, Section X.I.  As part of their monitoring plan, dischargers must identify all storm water discharge locations.  Permit, Section X.I.2.  Dischargers must then conduct monthly visual observations of each drainage area, as well as visual observations during discharge sampling events.  General Permit, Section XI.A.1 and 2.

Dischargers must collect and analyze storm water samples from two (2) storm events within the first half of each reporting year (July 1 to December 31) and two (2) storm events during the second half of each reporting year (January 1 to June 3).  General Permit, Section XI.B.  Section XI.B requires dischargers to sample and analyze during the wet season for basic parameters such as pH, total suspended solids ("TSS") and oil and grease ("O&G"), certain industry-specific parameters set forth in Table 2 of the General Permit, and other pollutants likely to be in the storm water discharged from the facility based on the pollutant source assessment.  Permit, Section XI.B.6.   Dischargers must submit all sampling and analytical results via SMARTS within thirty (30) days of obtaining all results for each sampling event. Section XI.B.11.

Kernen Construction has failed to develop and implement an adequate Monitoring Implementation Plan.  These failures include using incorrect test methods to analyze samples and failing to analyze each sample for all required parameters.

Each day that Kernen Construction has failed to develop and implement an adequate Monitoring Implementation Plan is a separate and distinct violation of the Act and Permit. Kernen Construction has been in violation of the Monitoring Implementation Plan requirements every day since at least May 13, 2011.

**6.     Kernen Construction Has Failed to Develop and Implement an Adequate Storm Water Pollution Prevention Plan.**

The General Permit requires dischargers to develop and implement a site-specific SWPPP. 1997 General Permit, Section A.1; 2015 General Permit, Section X.A.  The SWPPP must include, among other elements: (1) the facility name and contact information; (2) a site map; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if applicable; (8) a monitoring implementation plan; (9) annual comprehensive facility compliance evaluation; and (10) the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable. *See id.*

Dischargers must revise their SWPPP whenever necessary and certify and submit via the Regional Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") their SWPPP within 30 days whenever the SWPPP contains significant revisions(s); and, certify and submit via SMARTS for any non-significant revisions not more than once every three (3) months in the reporting year. 2015 General Permit, Section X.B; see also 1997 General permit, Section A.

CATs's investigation indicates that Kernen Construction has been operating with an inadequately developed or implemented SWPPP in violation of General Permit requirements. Kernen Construction has failed to evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary, resulting in the Facility's numerous effluent limitation violations.

Each day Kernen Construction failed to develop and implement an adequate SWPPP is a violation of the General Permit. The SWPPP violations described above were at all times in violation of Section A of the 1997 General Permit, and Section X of the 2015 General Permit. Kernen Construction has been in violation of these requirements at the Facility every day since at least May 13, 2011.

**III.     Persons Responsible for the Violations.**

CATs puts Kernen Construction on notice that they are the persons and entities responsible for the violations described above.  If additional persons are subsequently identified as also being responsible for the violations set forth above, CATs puts Kernen Construction on formal notice that it intends to include those persons in this action.

**IV.     Name and Address of Noticing Parties.**

The name, address and telephone number of each of the noticing parties is as follows:
Patricia Clary, Executive Director
Californians for Alternatives to Toxics
P.O. Box 900
Eureka, CA 95502
(707) 834-4833

**V.     Counsel.**

CATs has retained legal counsel to represent it in this matter. Please direct all communications to:

Andrew L. Packard                           David Williams
Megan E. Truxillo                           Klamath Environmental Law Center
William N. Carlon                           1990 N. California Blvd., 8 Floor th
Law Offices Of Andrew L. Packard            Walnut Creek, CA 94596
100 Petaluma Boulevard North, Suite 301     (510) 847-2356
Petaluma, CA 94952                          davidhwilliams@earthlink.net
(707) 763-7227
Andrew@PackardLawOffices.com

William Verick
Klamath Environmental Law Center
1125 Sixteenth Street, Suite 204
Arcata, CA 95521
(707) 630-5061
wverick@igc.org

**VI.     Conclusion**

CATs believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit. We intend to file a citizen suit under Section 505(a) of the CWA against Kernen Construction Company and their agents for the above-referenced violations upon the expiration of the 60-day notice period. If you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period. We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

Sincerely,

_____
Andrew L. Packard
Law Offices of Andrew L. Packard
Counsel for Californians for Alternatives to Toxics

## SERVICE LIST

**VIA CERTIFIED MAIL**

Gina McCarthy, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Jared Blumenfield, Regional Administrator
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, CA 94105

Hon. Loretta Lynch
U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Thomas Howard, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812

Matthias St. John, Executive Officer
North Coast Regional Water Quality Control Board
5550 Skylane Boulevard Suite A
Santa Rosa, CA 95403

**ATTACHMENT A**
**Notice of Intent to File Suit, Kernen Construction**
**Significant Rain Events,* 5/13/2011 – 5/13/2016**

| | | | |
|---|---|---|---|
| May 15, 2011 | January 19, 2012 | April 10, 2012 | December 4, 2012 |
| May 16, 2011 | January 20, 2012 | April 11, 2012 | December 5, 2012 |
| May 17, 2011 | January 21, 2012 | April 12, 2012 | December 12, 2012 |
| May 18, 2011 | January 22, 2012 | April 13, 2012 | December 16, 2012 |
| May 25, 2011 | January 23, 2012 | April 14, 2012 | December 17, 2012 |
| May 26, 2011 | January 25, 2012 | April 17, 2012 | December 18, 2012 |
| May 27, 2011 | January 26, 2012 | April 18, 2012 | December 19, 2012 |
| May 28, 2011 | January 30, 2012 | April 19, 2012 | December 20, 2012 |
| May 29, 2011 | February 1, 2012 | April 20, 2012 | December 21, 2012 |
| May 31, 2011 | February 8, 2012 | April 26, 2012 | December 22, 2012 |
| June 1, 2011 | February 10, 2012 | April 27, 2012 | December 23, 2012 |
| June 2, 2011 | February 11, 2012 | May 3, 2012 | December 24, 2012 |
| June 6, 2011 | February 13, 2012 | May 4, 2012 | December 25, 2012 |
| June 28, 2011 | February 18, 2012 | May 22, 2012 | December 26, 2012 |
| June 29, 2011 | February 25, 2012 | May 25, 2012 | December 27, 2012 |
| July 19, 2011 | February 29, 2012 | June 3, 2012 | December 29, 2012 |
| September 25, 2011 | March 1, 2012 | June 4, 2012 | January 10, 2013 |
| October 3, 2011 | March 2, 2012 | June 5, 2012 | January 11, 2013 |
| October 4, 2011 | March 6, 2012 | June 23, 2012 | January 24, 2013 |
| October 5, 2011 | March 11, 2012 | June 26, 2012 | January 26, 2013 |
| October 6, 2011 | March 12, 2012 | July 1, 2012 | January 27, 2013 |
| October 10, 2011 | March 13, 2012 | July 17, 2012 | January 28, 2013 |
| October 11, 2011 | March 15, 2012 | July 18, 2012 | February 6, 2013 |
| October 12, 2011 | March 16, 2012 | July 20, 2012 | February 7, 2013 |
| November 3, 2011 | March 17, 2012 | October 12, 2012 | February 8, 2013 |
| November 4, 2011 | March 18, 2012 | October 13, 2012 | February 19, 2013 |
| November 6, 2011 | March 19, 2012 | October 16, 2012 | February 20, 2013 |
| November 7, 2011 | March 20, 2012 | October 20, 2012 | February 23, 2013 |
| November 17, 2011 | March 21, 2012 | October 22, 2012 | February 28, 2013 |
| November 18, 2011 | March 22, 2012 | October 23, 2012 | March 1, 2013 |
| November 19, 2011 | March 24, 2012 | October 24, 2012 | March 6, 2013 |
| November 20, 2011 | March 25, 2012 | November 1, 2012 | March 7, 2013 |
| November 23, 2011 | March 27, 2012 | November 3, 2012 | March 20, 2013 |
| November 24, 2011 | March 28, 2012 | November 9, 2012 | March 21, 2013 |
| November 25, 2011 | March 29, 2012 | November 10, 2012 | March 27, 2013 |
| December 15, 2011 | March 30, 2012 | November 20, 2012 | March 31, 2013 |
| December 26, 2011 | March 31, 2012 | November 21, 2012 | April 1, 2013 |
| December 28, 2011 | April 1, 2012 | November 28, 2012 | April 4, 2013 |
| December 29, 2011 | April 2, 2012 | November 29, 2012 | April 5, 2013 |
| December 30, 2011 | April 4, 2012 | November 30, 2012 | April 6, 2013 |
| December 31, 2011 | April 5, 2012 | December 1, 2012 | April 7, 2013 |
| January 5, 2012 | April 9, 2012 | December 2, 2012 | April 8, 2013 |
| May 7, 2013 | February 18, 2014 | October 21, 2014 | March 21, 2015 |
| May 16, 2013 | February 19, 2014 | October 23, 2014 | March 22, 2015 |

* Dates gathered from publicly available rain and weather data collected at stations located near the Facility.

**ATTACHMENT A**
**Notice of Intent to File Suit, Kernen Construction**
**Significant Rain Events,* 5/13/2011 – 5/13/2016**

| | | | |
|---|---|---|---|
| May 17, 2013 | February 27, 2014 | October 24, 2014 | March 28, 2015 |
| May 22, 2013 | February 28, 2014 | October 25, 2014 | March 31, 2015 |
| May 26, 2013 | March 1, 2014 | October 26, 2014 | April 6, 2015 |
| May 27, 2013 | March 2, 2014 | October 31, 2014 | April 7, 2015 |
| May 28, 2013 | March 3, 2014 | November 7, 2014 | April 14, 2015 |
| May 29, 2013 | March 4, 2014 | November 13, 2014 | June 2, 2015 |
| May 30, 2013 | March 5, 2014 | November 15, 2014 | July 9, 2015 |
| June 19, 2013 | March 6, 2014 | November 20, 2014 | July 10, 2015 |
| June 24, 2013 | March 9, 2014 | November 21, 2014 | August 29, 2015 |
| June 26, 2013 | March 10, 2014 | November 22, 2014 | September 17, 2015 |
| September 17, 2013 | March 17, 2014 | November 29, 2014 | September 18, 2015 |
| September 18, 2013 | March 25, 2014 | December 1, 2014 | October 17, 2015 |
| September 21, 2013 | March 26, 2014 | December 3, 2014 | October 26, 2015 |
| September 22, 2013 | March 27, 2014 | December 4, 2014 | October 28, 2015 |
| September 23, 2013 | March 28, 2014 | December 6, 2014 | November 1, 2015 |
| September 25, 2013 | March 29, 2014 | December 8, 2014 | November 2, 2015 |
| September 29, 2013 | March 31, 2014 | December 11, 2014 | November 8, 2015 |
| September 30, 2013 | April 1, 2014 | December 12, 2014 | November 9, 2015 |
| November 3, 2013 | April 20, 2014 | December 13, 2014 | November 10, 2015 |
| November 8, 2013 | April 22, 2014 | December 16, 2014 | November 15, 2015 |
| November 12, 2013 | April 23, 2014 | December 17, 2014 | November 16, 2015 |
| November 13, 2013 | April 24, 2014 | December 18, 2014 | November 17, 2015 |
| November 19, 2013 | April 25, 2014 | December 19, 2014 | November 18, 2015 |
| November 20, 2013 | April 27, 2014 | December 20, 2014 | November 20, 2015 |
| December 3, 2013 | May 5, 2014 | December 21, 2014 | November 24, 2015 |
| December 7, 2013 | May 9, 2014 | December 22, 2014 | November 25, 2015 |
| January 8, 2014 | May 10, 2014 | December 25, 2014 | December 2, 2015 |
| January 9, 2014 | May 18, 2014 | December 30, 2014 | December 3, 2015 |
| January 10, 2014 | May 19, 2014 | January 16, 2015 | December 4, 2015 |
| January 11, 2014 | May 20, 2014 | January 18, 2015 | December 6, 2015 |
| January 12, 2014 | June 25, 2014 | February 2, 2015 | December 9, 2015 |
| January 29, 2014 | June 26, 2014 | February 3, 2015 | December 10, 2015 |
| January 30, 2014 | June 27, 2014 | February 5, 2015 | December 11, 2015 |
| February 7, 2014 | June 28, 2014 | February 6, 2015 | December 12, 2015 |
| February 8, 2014 | September 18, 2014 | February 7, 2015 | December 13, 2015 |
| February 9, 2014 | September 24, 2014 | February 9, 2015 | December 14, 2015 |
| February 10, 2014 | September 25, 2014 | February 10, 2015 | December 17, 2015 |
| February 13, 2014 | September 26, 2014 | February 27, 2015 | December 18, 2015 |
| February 14, 2014 | October 15, 2014 | February 28, 2015 | December 22, 2015 |
| February 15, 2014 | October 18, 2014 | March 12, 2015 | December 23, 2015 |
| February 16, 2014 | October 20, 2014 | March 16, 2015 | December 24, 2015 |
| December 19, 2015 | March 10, 2016 | March 23, 2015 | December 25, 2015 |
| December 20, 2015 | March 12, 2016 | March 24, 2015 | December 28, 2015 |
| December 21, 2015 | March 13, 2016 | March 25, 2015 | December 30, 2015 |

* Dates gathered from publicly available rain and weather data collected at stations located near the Facility.

## ATTACHMENT A
## Notice of Intent to File Suit, Kernen Construction
## Significant Rain Events,* 5/13/2011 – 5/13/2016

| | |
|---|---|
| January 5, 2016 | March 27, 2016 |
| January 6, 2016 | April 4, 2016 |
| January 8, 2016 | April 9, 2016 |
| January 9, 2016 | April 14, 2016 |
| January 10, 2016 | April 15, 2016 |
| January 12, 2016 | April 22, 2016 |
| January 13, 2016 | April 23, 2016 |
| January 14, 2016 | April 24, 2016 |
| January 15, 2016 | April 27, 2016 |
| January 16, 2016 | April 28, 2016 |
| January 17, 2016 | |
| January 18, 2016 | |
| January 19, 2016 | |
| January 20, 2016 | |
| January 22, 2016 | |
| January 23, 2016 | |
| January 24, 2016 | |
| January 25, 2016 | |
| January 29, 2016 | |
| January 30, 2016 | |
| February 4, 2016 | |
| February 13, 2016 | |
| February 18, 2016 | |
| February 19, 2016 | |
| February 20, 2016 | |
| February 22, 2016 | |
| February 27, 2016 | |
| February 29, 2016 | |
| March 2, 2016 | |
| March 3, 2016 | |
| March 5, 2016 | |
| March 6, 2016 | |
| March 7, 2016 | |
| March 9, 2016 | |
| March 14, 2016 | |
| March 15, 2016 | |
| March 20, 2016 | |
| March 21, 2016 | |
| March 22, 2016 | |
| March 23, 2016 | |

* Dates gathered from publicly available rain and weather data collected at stations located near the Facility.

**EXHIBIT C – Proposition 65 Notice of Violation Letter**

June 2, 2016

## VIA CERTIFIED MAIL

Public Enforcement Agencies             Scott Farley, Partner
(See attached Service List)              Kernen Construction Glendale Yard
                                         2350 Glendale Drive
                                         McKinleyville, CA 95519


Kurt Kernen, Agent for Service of Process    Norman Farley, Partner
Bedrock Investments, LLC                     Kernen Construction Company
2350 Glendale Road                           P.O. Box 1340
Arcata, CA 95519                             Blue Lake, CA 95525


**NOTICE OF VIOLATION AND INTENT TO FILE SUIT UNDER HEALTH &
SAFETY CODE § 25249.5 *et seq.* (California Safe Drinking Water and Toxic
Enforcement Act, a.k.a. "Proposition 65")**

Dear Public Enforcement Agencies and Mssrs. Farley and Kernen:

This office represents Californians for Alternatives to Toxics ("CATs"), a
California non-profit public benefit corporation with over 2,000 members.  CATs is
dedicated to safeguarding the public from health hazards, reducing the use and misuse of
toxic substances, encouraging corporate responsibility, and ensuring safe drinking water
for consumers.  CATs brings this action in the public interest, pursuant to Health &
Safety Code § 25249.7(d).  Unless otherwise noted, Kernen Construction Company and
Bedrock Investments, LLC shall hereinafter be referred to as the "Violator."

CATs has documented violations of California's Safe Drinking Water & Toxic
Enforcement Act of 1986, codified at Health & Safety Code § 25249.5 *et seq.* (also
commonly referred to as "Proposition 65" or "Prop. 65").  This letter serves to provide
the public prosecutors and the Violator with CATs's notification of these violations and
intent to sue.

Pursuant to Health & Safety Code § 25249.7(d), CATs intends to bring an
enforcement action sixty (60) days after effective service of this notice unless the public
prosecutors commence and diligently prosecute an action against the Violator for the
same alleged violations.  A summary of the statute and its implementing regulations,
which was prepared by the lead agency designated under the statute, is enclosed with the

copy of this notice served upon the violator.  The specific details of the violations that are the subject of this notice are provided below.

## Identity of Chemicals

The Violator is a "person[s] in the course of doing business" as defined in Health & Safety Code § 25249.11, that discharges, deposits, or releases Proposition 65-listed chemicals into existing sources of drinking water not designated as exempt by the Safe Drinking Water Act of 1974 (42 U.S.C. § 300(f) *et seq.*).

These violations involve the discharge and/or release of lead and lead compounds to sources of drinking water.  Lead and lead compounds have been on the Proposition 65 list for more that the twenty months grace period provided under Health & Safety Code § 25249.9(a).  These Proposition 65-listed toxins have been discharged, and are likely to continue to be discharged, by the Violator from the Glendale Yard facility located at 2350 Glendale Drive, McKinleyville, California 95519 ("Facility").

## Sources of Drinking Water

The Violator is discharging lead and lead compounds from the Facility to designated sources of drinking water in violation of Proposition 65.  A "source of drinking water" means either a present source of drinking water or water which is identified or designated in a Water Quality Control Plan adopted by a Regional Water Quality Control Board as being suitable for domestic or municipal uses.  Health & Safety Code § 25249.11(d).

The Violator is allowing storm water contaminated with lead and lead compounds to discharge and/or release from the Facility into Hall Creek, a tributary to the Mad River.  The Mad River is designated as an existing source of municipal and domestic drinking water in the "*Water Quality Control Plan for the North Coast Region (Revised May 2011)*," generally referred to as the "Basin Plan."  Basin Plan, 2-8.00.

## Approximate Time Period of Violations

Information available to CATs indicates that these ongoing unlawful discharges have been occurring since at least approximately 2012.  Based on the allegations set forth in this Notice, CATs intends to file a citizen enforcement action against the alleged violators unless the violators agrees in a binding written instrument to remedy the violations alleged herein by ceasing ongoing and future discharges of the identified Proposition 65-listed chemicals, and paying appropriate costs, fees and civil penalties pursuant to Health & Safety Code Section 25249.7, Code of Civil Procedure Sections 1021.5 and 1033.5, *et seq.*  As part of its public interest mission and to rectify these ongoing violations of California law, CATs is interested in resolving these violations expeditiously, without the necessity of costly and protracted litigation.

CATs's address is 600 F Street, Suite 3, Arcata, California 95521. The name and telephone number of the noticing individual within CATs is Patricia Clary, Executive Director, (707) 834-4833. However, CATs has retained legal counsel to represent it in this matter. Therefore, please direct all communications regarding this Notice to CATs's outside counsel in this matter:

Andrew L. Packard
William N. Carlon
Law Offices of Andrew L. Packard
100 Petaluma Boulevard North, Suite 301
Petaluma, CA 94952
Tel. (707) 763-7227
Fax. (707) 763-9227
Andrew@PackardLawOffices.com

Sincerely,

Andrew L. Packard
Attorneys for Plaintiff
Californians for Alternatives to Toxics

cc: (see attached Certificate of Service)

**EXHIBIT D**

| Parameter | Test Method | Reporting Units | Evaluation Level | Instantaneous Maximum NAL |
|---|---|---|---|---|
| pH | See Section XI.C.2 of the General Permit | pH units | N/A | Less than 6.0 Greater than 9.0 |
| Total Suspended Solids | SM 2540-D | mg/L | 100 | 400 |
| Oil & Grease | EPA 1664A | mg/L | 15 | 25 |
| Chemical Oxygen Demand (COD) | COD | mg/L | 120 | |
| Aluminum | EPA 200.8 | mg/L | 0.75 | |
| Iron | EPA 200.7 | mg/L | 1.0 | |
| Lead (H) | EPA 200.8 | mg/L | 0.069* | |
| Zinc (H) | EPA 200.8 | mg/L | 0.11* | |
| Copper (H) | EPA 200.8 | mg/L | 0.0123* | |
| Nitrate plus Nitrite Nitrogen | SM4500-NO3-E | mg/L as N | 0.68 | |
| Polychlorinated biphenyls ("PCBs") Aroclors | EPA Method 8082A | mg/L | 0.000014 | |
| Pentachlorophenol | EPA Method 625 | mg/l | 7.9 | |

SM – Standard Methods for the Examination of Water and Wastewater, 18th edition
EPA – U.S. EPA test methods
(H) – Hardness dependent

*These values assume a hardness value of 75 mg/L, based on historical hardness data from the United States Geological Survey California Water Science Center:

| All Units mg/L | Benchmark Values (mg/L, total) | | |
|---|---|---|---|
| | **Lead** | **Zinc** | **Copper** |
| 0-25 mg/L | 0.014 | 0.04 | 0.0038 |
| 25-50 mg/L | 0.023 | 0.05 | 0.0056 |
| 50-75 mg/L | 0.045 | 0.08 | 0.0090 |
| **75-100 mg/L** | **0.069** | **0.11** | **0.0123** |
| 100-125 mg/L | 0.095 | 0.13 | 0.0156 |
| 125-150 mg/L | 0.122 | 0.16 | 0.0189 |
| 150-175 mg/L | 0.151 | 0.18 | 0.0221 |
| 175-200 mg/L | 0.182 | 0.20 | 0.0253 |
| 200-225 mg/L | 0.213 | 0.23 | 0.0285 |
| 225-250 mg/L | 0.246 | 0.25 | 0.0316 |
| 250+ mg/L | 0.262 | 0.26 | 0.0332 |